UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TANNINS OF INDIANAPOLIS, LLC et al.,                   Plaintiffs,

v.                   Civil Action No. 3:19-cv-504-DJH-CHL

DANIEL CAMERON,[1] in his official
capacity as Attorney General of Kentucky,
and ALLYSON COX TAYLOR, in her
official capacity as Commissioner of the
Department of Alcoholic Beverage Control,                   Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Kentucky law prohibits out-of-state retailers "in the business of selling alcoholic beverages" from shipping or delivering alcohol directly to consumers in the Commonwealth. *See* Ky. Rev. Stat. § 244.165(1). In-state retailers, however, can deliver alcohol directly to consumers so long as they obtain the appropriate license. *See id.* § 243.240(1)(b) (authorizing the holder of a "quota retail package license" to "[d]eliver to the consumer . . . alcoholic beverages that are purchased from the licensed premises"). Plaintiffs Tannins of Indianapolis, LLC; Jack Bailey; Steven A. Bass; and David Kittle challenged the constitutionality of this statutory scheme, claiming that it violated the Commerce Clause and the Privileges and Immunities Clause of the United States Constitution. (Docket No. 33, PageID # 169–70) The Court granted the Kentucky attorney general's motion to dismiss the plaintiffs' second amended complaint for failure to state a claim (D.N. 53), and it later dismissed the remaining claims against the commissioner of the Department of Alcoholic Beverage Control for the same reason. (D.N. 55) The plaintiffs now

---

[1] Per Federal Rule of Civil Procedure 25(d), Cameron is automatically substituted for his predecessor, Andrew G. Beshear.

1

move for an order altering or amending the Court's dismissal of their case. (D.N. 56) For the reasons explained below, the Court will deny the plaintiffs' motion.

I.

Plaintiff Tannins of Indianapolis, LLC is an Indiana-based wine retailer operated by Plaintiff Bailey.[2] (D.N. 33, PageID # 171) Tannins sells some of its wines online and ships them directly to customers throughout the country. (*Id.*) Yet it cannot sell and ship wine directly to interested customers in Kentucky because Kentucky law makes it "unlawful for any person in the business of selling alcoholic beverages in another state or country to deliver or ship or cause to be delivered or shipped any alcoholic beverage directly to any Kentucky consumer who does not hold a valid wholesaler or distributor license issued by the Commonwealth." Ky. Rev. Stat. § 244.165(1). Tannins could potentially acquire a license permitting it to make direct-to-consumer wine deliveries in Kentucky if it maintained a physical presence in the Commonwealth, but Tannins "has no business reason to establish physical premises in Kentucky [and] cannot afford to do so." (D.N. 33, PageID # 172) Plaintiffs Bass and Kittle are wine consumers who wish to purchase wine from Tannins and other out-of-state retailers and have those wines shipped to their residences in Kentucky. (*Id.*, PageID # 173–74) Such interstate wine orders, however, are likewise prohibited by Kentucky law. (*Id.*, PageID # 174 (citing Ky. Rev. Stat. § 244.165))

The plaintiffs brought this action under 42 U.S.C. § 1983, alleging that the Kentucky laws that ban direct-to-consumer wine deliveries by out-of-state retailers yet permit such deliveries by in-state retailers "discriminat[e] against interstate commerce and protect[] the economic interest

---

[2] The facts provided here come from the plaintiffs' second amended complaint (D.N. 33), which the Court dismissed for failure to state a claim (D.N. 53; D.N. 55). In dismissing the second amended complaint, the Court accepted the plaintiffs' well-pleaded factual allegations as true (D.N. 53, PageID # 250), and it does the same for purposes of the present motion.

2

of local businesses by shielding them from competition, in violation of the Commerce Clause of the United States Constitution." (*Id.*) They also claimed that the laws "den[ied] [Plaintiff] Bailey the privilege to engage in his occupation in the Commonwealth upon the same terms as Kentucky citizens" in violation of the Privileges and Immunities Clause. (*Id.*, PageID # 176)

Kentucky's attorney general, one of the official-capacity defendants in this matter, filed a motion to dismiss the plaintiffs' second amended complaint in May 2020 (D.N. 47), which the Court granted (D.N. 53). In its order granting the attorney general's motion, the Court observed that the Sixth Circuit's decision in *Lebamoff Enterprises Inc. v. Whitmer*, 956 F.3d 863 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1049 (2021), "resolved a question strikingly similar to the one" raised in the plaintiffs' case. (*Id.*, PageID # 252) And because the plaintiffs "ha[d] pleaded no facts to distinguish" their case from *Lebamoff*, that decision, the Court concluded, foreclosed their Commerce Clause claim. (*Id.*, PageID # 254) The Court also dismissed the plaintiffs' Privileges and Immunities Clause claim because they conceded that recent changes to Kentucky law rendered it moot. (*Id.*; *see* D.N. 49, PageID # 231) The Court then dismissed the plaintiffs' remaining claims against the commissioner of the Department of Alcoholic Beverage Control in a separate order (D.N. 55) after the plaintiffs further conceded that "if it [wa]s appropriate to dismiss the complaint against [the attorney general], it [wa]s appropriate to dismiss the complaint against [the commissioner] also on the same grounds." (D.N. 54, PageID # 256)

The plaintiffs now move pursuant to Federal Rule of Civil Procedure 59(e) for an order altering or amending the Court's dismissal of their second amended complaint. (D.N. 56) The plaintiffs ask the Court to vacate its grant of the attorney general's motion to dismiss, reopen their case, and "allow the parties to present evidence in support [of] or opposition to [Kentucky's] purported justification for discriminating against out-of-state wine retailers." (*Id.*, PageID # 260)

In the alternative, they ask the Court to amend its dismissal order to provide that their case was dismissed without prejudice and to grant them leave to file a third amended complaint. (*Id.*, PageID # 263) The commissioner and the attorney general both filed responses opposing the plaintiffs' motion (D.N. 59; D.N. 60), and the plaintiffs replied (D.N. 61).

## II.

### A.

Federal Rule of Civil Procedure 59(e) permits a district court to "alter or amend a judgment" that has already been entered, including an order dismissing a case for failure to state a claim. *See* Fed. R. Civ. P. 59(e); *see also* Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise . . . any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."). But relief under Rule 59(e) "constitutes an extraordinary remedy reserved for exceptional cases." *Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, No. 5:20-cv-2407, 2021 WL 2228676, at \*2 (N.D. Ohio June 3, 2021); *see also Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 747 (W.D. Ky. 2013) (noting that Rule 59(e) motions are "extraordinary and sparingly granted"). A Rule 59 motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008)). Instead, a district court may only alter or amend its judgment based on "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

B.

Here, the plaintiffs contend that their Rule 59(e) motion should be granted because the Court erred when it dismissed their Commerce Clause challenge to Kentucky's ban on direct-to-consumer alcohol deliveries by out-of-state retailers at the pleading stage. (*See* D.N. 56, PageID # 260–61; D.N. 61, PageID # 309)  The Court's dismissal was "premature," they argue, because "the constitutionality" of such a ban "is a question of fact" that cannot be adjudicated until the state presents evidence indicating that the ban is "necessary to advance a legitimate state purpose that could not be furthered by nondiscriminatory means." (D.N. 56, PageID # 260–61 (citing *Granholm v. Heald*, 544 U.S. 460, 492–93 (2005))  More specifically, the plaintiffs assert that in order for Kentucky's "wine shipping ban" to survive their Commerce Clause challenge, Supreme Court and Sixth Circuit case law—and "[e]ven the decision in *Lebamoff*"—require Kentucky to "demonstrate[]" via an evidentiary record that the ban "actually serves public health and is not just a pretext for protectionism." (D.N. 61, PageID # 307–08; *see* D.N. 56, PageID # 261–62)  The Court thus "misinterpreted *Lebamoff* and applied the wrong legal standard," according to the plaintiffs, when it dismissed their Commerce Clause claim on the pleadings "without requiring [such] evidence." (D.N. 61, PageID # 309)

The plaintiffs argue, in essence, that the Court's misapplication of *Lebamoff* in its order dismissing their case (D.N. 53) amounted to a "clear error of law" that warrants granting their Rule 59(e) motion, *see Leisure Caviar, LLC*, 616 F.3d at 615. (*See* D.N. 61, PageID # 309)  But a close reading of Judge Sutton's opinion in *Lebamoff* confirms that the Court correctly found the plaintiffs' Commerce Clause claim to be entirely foreclosed by that decision. (*See* D.N. 53, PageID # 254)  The *Lebamoff* court held that the Constitution permits states that use a three-tier system of alcohol distribution to prohibit direct-to-consumer alcohol deliveries by out-of-state

5

retailers yet allow in-state retailers to make such deliveries. *See Lebamoff*, 956 F.3d at 867. The *Lebamoff* court did not, as the plaintiffs claim, rely on "evidence in the record" to reach that holding. (*See* D.N. 56, PageID # 262) And that holding directly resolved—and thus required the dismissal of—the plaintiffs' Commerce Clause challenge to Kentucky's own ban on direct alcohol deliveries by out-of-state retailers like Plaintiff Tannins.

As the Court observed in its order granting the attorney general's motion to dismiss, "*Lebamoff* resolved a question strikingly similar to the one at issue" in the plaintiffs' case here (D.N. 53, PageID # 252)—namely, "whether Michigan may permit its retailers to offer at-home [alcohol] deliveries within the State while denying the same option to an Indiana retailer who does not have a Michigan retail license," *Lebamoff*, 956 F.3d at 867. The *Lebamoff* court acknowledged that, as a general matter, the Commerce Clause "impliedly 'prohibits state laws' . . . 'that unduly restrict interstate commerce.'" *Id.* at 869 (quoting *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019)). But due to the "accordion-like interplay" of the Commerce Clause and the Twenty-first Amendment,[3] the court underscored that state laws restricting interstate commerce *in alcohol* are subject to a "'different' test." *Id.* (quoting *Tenn. Wine & Spirits*, 139 S. Ct. at 2474). Put simply, when presented with a Commerce Clause challenge to a state alcohol regulation, a court must ask "whether the law 'can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground.'" *Id.* (quoting *Tenn. Wine & Spirits*, 139 S. Ct. at 2474). The *Lebamoff* court noted that a "three-tier system of alcohol distribution" like the

---

[3] The Twenty-first Amendment provides in relevant part that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2.

one used in Michigan and most other states—including Kentucky[4]—is "unquestionably legitimate" under this standard. *Id.* at 869 (quoting *Granholm v. Heald*, 544 U.S. 460, 489 (2005)); *see also id.* ("The courts have frequently said that the Twenty-first Amendment permits a three-tier system of alcohol distribution, and the Commerce Clause does not impliedly prohibit it."). The court also highlighted certain features of a three-tier system that federal courts have consistently deemed constitutionally permissible, such as extensive state regulation of alcohol wholesalers and state laws requiring alcohol retailers to be "physically based in the State." *See id.* at 870.

Given this well-established legal backdrop, the *Lebamoff* court characterized the question before it as a "narrow" one: "If Michigan may have a three-tier system that requires all alcohol sales to run through its in-state wholesalers, and if it may require retailers to locate within the State, may it [also] limit" direct-to-consumer alcohol deliveries solely "to in-state retailers?" *Id.* "The answer," according to the court, was "yes." *Id.* This was so because Michigan's ban on direct alcohol deliveries by out-of-state retailers was constitutional so long as it could "be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." *Id.* at 871 (quoting *Tenn. Wine & Spirits*, 139 S. Ct. at 2474). And because Michigan "could not maintain a

---

[4] Under a three-tier system of alcohol distribution, producers are required to sell their products to in-state wholesalers, who sell to in-state retailers, who in turn sell to consumers. *See Lebamoff*, 956 F.3d at 868. Like most other states, *id.*, "Kentucky has a well-established three-tier system in place," *Cherry Hill Vineyards, LLC v. Hudgins*, 488 F. Supp. 2d 601, 618 (W.D. Ky. 2006). *See, e.g.*, Ky. Rev. Stat. § 243.020(1) (prohibiting anyone from manufacturing, storing, selling, purchasing, or transporting "alcoholic beverages" without the appropriate license); *id.* § 243.130(8)(a) (recognizing Kentucky's "policy . . . supporting an orderly three (3) tier system for the production and sale of alcoholic beverages"); *id.* § 243.240(2) (requiring the holder of a quota retail package license to purchase distilled spirits and wine only from "[l]icensed wholesalers" and other licensed sellers); *id.* § 244.060(1) (providing that "[n]o licensee shall purchase or agree to purchase any alcoholic beverages from any person within or without [Kentucky], who is not licensed to sell the beverages to the particular purchaser").

three-tier system"—and the various public-health, temperance, taxation, and regulatory interests that such a system "promotes"—"without barring direct [alcohol] deliveries from outside its borders," the state's ban advanced "plenty of legitimate state interests," including Michigan's general interest "in preserving a three-tier system." *See id.* at 871–73. As the *Lebamoff* court explained, "[o]pening up the State to direct deliveries from out-of-state retailers" would inevitably "create a sizeable hole in [Michigan's] three-tier system"; such deliveries would "necessarily" permit some alcohol to bypass Michigan's highly regulated wholesalers entirely and thus allow "out-of-state retailers to undercut local prices and to escape the State's interests in limiting consumption." *Id.* at 872; *see id.* at 873 ("But Michigan could not maintain a three-tier system, and the public-health interests the system promotes, without barring direct deliveries from outside its borders."). The court therefore concluded that because states have a "legitimate nonprotectionist" interest "in preserving a three-tier system," *see id.* at 871, 873, and because banning direct alcohol deliveries by out-of-state retailers is an essential feature of an effective three-tier system, *see id.* at 872, 874, such bans are constitutional. *See id.* at 867, 870.

In short, *Lebamoff* confirmed that states with a three-tier system can prohibit direct-to-consumer alcohol deliveries by out-of-state retailers without violating the Commerce Clause. *See id.*; *see also id.* at 871 (describing such prohibitions as "a valid exercise of [a state's] Twenty-first Amendment authority"). And Kentucky is no different. *See* Ky. Rev. Stat. § 244.165(1) (prohibiting direct-to-consumer alcohol deliveries in Kentucky by out-of-state retailers). Like Michigan in *Lebamoff*, Kentucky regulates alcohol distribution within its borders via a three-tier system. *See Cherry Hill Vineyards, LLC*, 488 F. Supp. 2d at 618. Like Michigan, Kentucky has a legitimate interest in preserving the integrity of its three-tier system. *See Lebamoff*, 956 F.3d at 873. Like Michigan, "there is no other way" Kentucky "could preserve the regulatory control

provided by the three-tier system" other than by prohibiting direct-to-consumer alcohol deliveries by out-of-state retailers. *See id.* at 873–74. And thus, like Michigan's, Kentucky's ban on such deliveries is constitutionally permissible under both the Commerce Clause and the Twenty-first Amendment. *See id.* 867, 870.

## C.

In their Rule 59(e) motion, the plaintiffs do not necessarily object to the Court's reading of *Lebamoff* as affirming the constitutionality of state bans on direct-to-consumer alcohol deliveries from out of state. Nor do they suggest that *Lebamoff* is inapplicable to their case. They instead contend that the question of whether *Lebamoff* forecloses their particular Commerce Clause claim cannot be resolved at the pleading stage. (*See* D.N. 56, PageID # 260–62) That is, the plaintiffs argue that whatever the *Lebamoff* court might have decided about Michigan's ban on direct alcohol deliveries by out-of-state retailers, the constitutionality of *Kentucky's* ban on such deliveries cannot be determined without a factual record. (*See* D.N. 61, PageID # 309) And the Court erred, according to the plaintiffs, by relying on *Lebamoff* to conclude otherwise. (*See id.*)

The plaintiffs are right that the *Lebamoff* court reversed the lower court's grant of summary judgment and thus had a factual record before it. *See Lebamoff*, 956 F.3d at 868–69. But the presence of a factual record in *Lebamoff* does not mean that the Sixth Circuit relied on that record to reach its holding, nor does it mean that such a record is necessary to resolve every other case that raises an issue "strikingly similar" to the one that *Lebamoff* decided (D.N. 53, PageID # 252). As the *Lebamoff* court made clear, the question it confronted was whether Michigan's decision to restrict direct-to-consumer alcohol deliveries to in-state retailers comported with the "accordion-like interplay" of the Commerce Clause and the Twenty-first Amendment. *See Lebamoff*, 956 F.3d at 869. And in answering that question in the affirmative, the court, contrary to what the

9

plaintiffs assert, barely mentioned "evidence in the record," much less "based" its holding and reasoning on such evidence.⁵ (*See* D.N. 56, PageID # 262 (claiming that "[e]ven the decision in *Lebamoff* . . . was based on evidence in the record, not the pleadings")) Instead, the *Lebamoff* court looked to Michigan law to confirm that the state's extensive alcohol regulations were designed to "funnel[]" alcohol sales "through [a] three-tier system"—a system that is "unquestionably legitimate" under the Constitution as a matter of law. *See Lebamoff*, 956 F.3d at 869 (quoting *Granholm*, 544 U.S. at 489); *id.* ("[I]t's worth acknowledging that case law authorizes several features of Michigan's system for regulating the distribution of alcohol within its borders."); *see also Jelovsek v. Bredesen*, 545 F.3d 431, 436 (6th Cir. 2008) (asserting that a state's "decision to adhere to a three-tier distribution system is immune from direct challenge on Commerce Clause grounds"). It looked to decisions from other circuit courts that had already held that prohibiting direct-to-consumer alcohol deliveries from out of state was "a valid exercise of [a state's] Twenty-

---

⁵ The plaintiffs cite Judge McKeague's concurrence, which was joined by Judge Donald, for the proposition that "[e]ven the decision in *Lebamoff* . . . was based on evidence in the record, not the pleadings." (*See* D.N. 56, PageID # 262) In response to this suggestion that the two-judge *Lebamoff* concurrence relied on a factual record to uphold Michigan's ban on direct alcohol deliveries from out of state, the Court notes that the discussion above confirms that the three-judge opinion decidedly did not. But even if the Court agreed with the plaintiffs that the *Lebamoff* concurrence requires that Kentucky "present sufficient evidence to show a public health justification" for its alcohol regulations, including its ban on direct deliveries by out-of-state retailers, *see Lebamoff*, 956 F.3d at 878 (McKeague, J., concurring), that would not change the Court's resolution of the plaintiffs' Commerce Clause claim here. That is because, in concluding that Michigan "ha[d] presented enough evidence . . . to show" that its ban "serve[d] the public health," the *Lebamoff* concurrence indicated that limiting direct-to-consumer alcohol deliveries to in-state retailers "ha[d] already been found to *inherently* protect public health." *Id.* at 877, 879 (emphasis added). And it also acknowledged the "other *baked-in* public health justifications that flow" from the three-tier system that Michigan's ban was designed to bolster. *Id.* at 879 (emphasis added). Accordingly, it makes little sense to ask Kentucky to "demonstrate[]" via an evidentiary record that its own ban "actually serves the public health" (D.N. 61, PageID # 308) if such bans "inherently" do so and if the ban's public-health justifications are already "baked[]in." *See Lebamoff*, 956 F.3d at 879 (McKeague, J., concurring).

10

first Amendment authority," *see Lebamoff*, 956 F.3d at 871–72, and crucially, none of those courts relied on a factual record in reaching their respective holdings.[6] And the *Lebamoff* court invoked logic and basic economics when it concluded that allowing direct-to-consumer alcohol deliveries from out of state "would create a sizeable hole in [Michigan's] three-tier system" and thus undermine the state's legitimate interest in preserving that system; no factual record was needed to reach this intuitive conclusion. *See id.* at 872. Consequently, if a factual record was not needed for the *Lebamoff* court to conclude that Michigan's ban on direct-to-consumer alcohol deliveries by out-of-state retailers did not violate the Commerce Clause, *see id.* at 867, 870, then no factual record is needed here in order for the Court to conclude the same about Kentucky's near-identical ban.

In sum, *Lebamoff* held that states with a three-tier system can prohibit out-of-state retailers from making direct-to-consumer alcohol deliveries yet allow their in-state counterparts to do so without running afoul of the Commerce Clause. *See id.* The Court therefore did not err when it concluded that the plaintiffs' Commerce Clause challenge to Kentucky's own such prohibition was foreclosed by *Lebamoff* and must be dismissed. (*See* D.N. 53, PageID # 254) And since the

---

[6] *See Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 813 (5th Cir. 2010) (noting that a Commerce Clause challenge to a Texas law barring out-of-state wine retailers from making direct deliveries to Texas consumers "almost exclusively concern[ed] questions of law"); *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185, 192 (2d Cir. 2009) (affirming the dismissal at the pleading stage of a Commerce Clause challenge to New York State's ban on direct-to-consumer alcohol sales by out-of-state liquor retailers); *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 851–54 (7th Cir. 2000) (looking to state law and the "text and history of the Constitution" rather than a factual record to uphold an Indiana law banning direct alcohol shipments to Indiana customers from out-of-state sellers). The Eighth Circuit also cited *Lebamoff* favorably in *Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171 (8th Cir. 2021), which affirmed the dismissal at the pleading stage of a Commerce Clause challenge to a Missouri law permitting only "licensed in-state retailers to deliver alcohol directly to Missouri consumers." *See* 987 F.3d at 1182–84. The *Schmitt* court concluded that the challengers had failed to state a viable claim because they "without question attack[ed] core provisions of Missouri's three-tiered system that the [Supreme] Court . . . described as 'unquestionably legitimate.'" *Id.* at 1183.

11

Court's dismissal of the plaintiffs' case was not based on a "clear error of law," their present motion to alter or amend that decision must be denied as well. *See Leisure Caviar, LLC*, 616 F.3d at 615.

### D.

As an alternative to their request that the Court alter or amend its dismissal of their case, the plaintiffs ask that the Court at least amend its prior order to indicate that the dismissal was without prejudice and grant them leave to file a third amended complaint. (D.N. 56, PageID # 263) The plaintiffs insist that such leave is warranted because they "had no realistic opportunity to seek to amend their complaint" after *Lebamoff* was decided in April 2020. (*Id.*) They maintain that *Lebamoff*'s impact on the "law controlling th[eir] case was not settled" until January 2021, when the Supreme Court declined to hear the Sixth Circuit's decision on appeal. (*Id.*) And because "the state of the law" was purportedly "in flux" for so long, they suggest that the Court must now offer them a chance to plead facts distinguishing their case from *Lebamoff*. (*Id.*, PageID # 263–64)

In support of their request, the plaintiffs cite Rule 15(a)(2)'s lenient standard for granting leave to amend a complaint. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). But a party seeking to amend a complaint post-dismissal "must shoulder a heavier burden." *Leisure Caviar, LLC*, 616 F.3d at 616. At that late stage, "the Rule 15 and Rule 59 inquiries turn on the same factors," *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002), meaning that a party can amend its complaint post-dismissal only if a district court first grants relief under Rule 59(e). *See Leisure Caviar, LLC*, 616 F.3d at 615. Accordingly, because the plaintiffs here have failed to demonstrate that their Rule 59(e) motion should be granted, that failure alone defeats their alternative request for leave to amend their complaint. *See United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 507 (6th Cir. 2008) (noting that, post-

dismissal, a district court must first "set aside a prior judgment under Rule 59(e)" before "permit[ting] an amended complaint to be filed"); *Leisure Caviar, LLC*, 616 F.3d at 617 (affirming the denial of a motion for leave to amend a complaint post-dismissal because the movants had failed to show that "newly discovered evidence" was sufficiently "compelling" to warrant a grant of a Rule 59(e) motion).

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the plaintiffs' motion to alter or amend the Court's prior dismissal of their case (D.N. 56) is **DENIED**.  This matter remains **CLOSED**.

December 28, 2021

David J. Hale, Judge
United States District Court